```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------x
                                                               :
LISSETTE RIVERA,                                               :
                                                               :
                          Plaintiff,                           :    OPINION & ORDER
                                                               :
              -against-                                        :    18 Civ. 1935 (GWG)
                                                               :
COMMISSIONER OF SOCIAL SECURITY,                               :
                                                               :
                          Defendant.                           :
                                                               :
---------------------------------------------------------------x
```

**GABRIEL W. GORENSTEIN, United States Magistrate Judge**

Pro se plaintiff Lissette Rivera brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Acting Commissioner of Social Security (the "Commissioner") denying her claim for Disability Insurance Benefits and Supplemental Security Income under the Social Security Act (the "Act"). Both Rivera and the Commissioner have moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c).[1] For the reasons stated below, Rivera's motion is granted and the Commissioner's motion is denied.

I. BACKGROUND

    A. Procedural History

Rivera filed applications for a period of disability and Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") in January and February 2015 alleging a disability onset date of January 17, 2014. See Certified Administrative Record, filed July 27,

---

[1] See Notice of Motion, filed July 27, 2018 (Docket # 15); Memorandum of Law in Support of the Commissioner's Motion for Judgment on the Pleadings, filed July 27, 2018 (Docket # 16) ("Def. Mem."); Plaintiff's Declaration and Memorandum of Law in Opposition to Commissioner's Motion for Judgment, filed Dec. 10, 2018 (Docket # 22) ("Pl. Opp."); Reply Memorandum of Law in Further Support of the Commissioner's Motion for Judgment on the Pleadings, filed Feb. 19, 2019 (Docket # 25) ("Def. Reply").

2018 (Docket # 14) ("R."), at 228, 237.  The Social Security Administration ("SSA") denied Rivera's applications on May 4, 2015.  R. 123-28.  Rivera then requested a hearing before an administrative law judge ("ALJ") to review the denial.  R. 140-42.  Rivera was represented by her then-attorney at a hearing before an ALJ, which occurred on April 26, 2017.  R. 73-100.  In a written decision dated May 12, 2017, the ALJ found that Rivera was not disabled within the meaning of the Act.  R. 47-64.  Rivera requested that the Appeals Council review the ALJ's decision, R. 37-38, and on January 16, 2018, the Appeals Council denied Rivera's request for review of the ALJ's decision, R. 1-5.  Rivera then timely filed her complaint in this matter.  Complaint, filed Mar. 1, 2018 (Docket # 2).

      B.  <u>The Hearing Before the ALJ</u>

Rivera's hearing before ALJ, which was conducted by video, occurred on April 26, 2017.  R. 73, 75.  At the hearing, Rivera gave testimony through a Spanish-language interpreter and was represented by her attorney, Ellen Ragin.  R. 75, 79.  Also present and testifying was a vocational expert ("VE"), Estelle Hutchinson.  R. 75, 95-99, 338-40.

At the time of the hearing, Rivera was 46 years old and lived with two of her three children, one of whom suffers from attention-deficit/hyperactivity disorder.  R. 79-80.  Rivera was born in Puerto Rico and never received any formal education in the United States.  R. 80.  She speaks only "some English."  R. 80.

Rivera testified first to her employment history.  She last worked as a kitchen aide at a cafeteria in New York City.  R. 81.  She worked four to five hours a day for five days a week.  R. 88-89.  Her duties included preparing breakfast, cleaning tables, serving food, and washing dishes.  R. 88.  The duties required lifting and carrying large trays of food, sometimes weighing around 25 pounds.  R. 89.  She would sometimes use a serving cart or wagon to deliver the food

upstairs. R. 89. She became injured in January 2014 while cleaning tables one day when she "heard a click" and noticed something had happened to her right lower back. R. 89. Previously, she had worked for the City of New York as a park cleaner in the early 2000s, where her duties required her to stand sometimes and sit most of the time because "there wasn't that much to do" in the winter months. R. 81. Those duties consisted mainly of "picking up garbage, and also taking garbage out of the canisters." R. 82. From about 2003 to 2010, Rivera worked at Rain Senior Option as a food delivery driver bringing food to seniors. R. 82. As delivery driver, Rivera would have to walk up and down sometimes five flights of stairs with "heavy" bags in her hands, which usually weighed at least 15 pounds in total. R. 90. Sometimes Rivera would walk more than five flights of stairs if she felt sorry for the person to whom she was delivering food. R. 90. Rivera did not believe she would currently be able to perform the cafeteria worker job, the park cleaner job, and the delivery driver position due to pain, which she experiences just from sitting down. R. 83. Rivera has not worked at all since her January 2014 injury. R. 80-81.

Rivera testified regarding her pain. She experiences pain in her right foot, which has bothered her for "[a]bout a year." R. 86-87. Rivera has been prescribed medication for her right foot pain, which helps "[s]omewhat." R. 87. As to her back pain, Rivera stated that the pain is worse when standing upright. R. 83-84. She also experiences stiffness, and it is difficult for her to bend or twist. R. 84. She has never had surgery on her back. R. 85. Although her doctors have offered the possibility of injections for the back pain, she has refused them because she is afraid. R. 85. Rivera has a back brace, and although she used to "us[e] it all the time," she no longer does so because "it's very uncomfortable." R. 85. She also participates in physical therapy, which helps. R. 85-86. From physical therapy, Rivera has learned exercises that can be done at home. R. 86. While she used to perform the home exercises, she has since stopped.

3

R. 86.

  Rivera also takes medication for the pain, and stated that it "helps a little." R. 84-85. The only side effect from her pain medication is drowsiness. R. 95. Rivera testified to other areas of pain. She has neck pain, which radiates from the middle of her neck down to her mid-back area. R. 91. She described the neck pain as giving her a "stiffness," as opposed to a "sharp," or "throbbing" pain. R. 91. She also has pain in her right hand, her dominant hand, stemming from a "second degree burn" and "a daily accident." R. 91. As a result of the hand pain, Rivera can no longer "lift heavy things" with her right hand. R. 92. Rivera also recently had received treatment for right leg pain. R. 92-93. She now walks with a limp, and can only walk "a block or two" before the "pain increases." R. 93. Rivera testified that since she stopped working, she has not gone an entire day without experiencing pain. R. 86. She cannot even "grab a gallon of milk" for more than "a little while" before she starts to feel pain. R. 84. There is no position Rivera can maintain without feeling pain. She stated: "In all positions I feel pain." R. 84. Sitting for an extended period of time only exacerbates her lower back pain. R. 92. Even sleeping is difficult, because "[e]very time [she] move[s] [she] wake[s] up." R. 95.

  As to daily activities, Rivera testified that, due to neck pain, she has trouble lifting her arms over her head to pull on a shirt or put her arms through a coat. R. 93. She needs to sit down to tie her shoes. R. 93-94. She has needed help getting dressed "[o]nce or twice." R. 94. She can bathe herself, though "it does bother [her] a little bit just to get into the bath." R. 94. Rivera testifies that she has difficulty doing chores around the house. R. 87. Rivera can still cook. R. 94. She explained that prior to her injury, she "was able to clean and move furniture," and clean the bathtub or ceiling tiles, but can no longer manage these tasks on her own due to her pain. R. 87-88, 94. She is still able to engage in some chores, but only with the help of her

husband or son. R. 88. For instance, while she used to go food shopping alone, now her husband or son has to go with her to help carry the grocery bags. R. 94. Rivera stated that she has no hobbies, and that she is "always in the house." R. 88. Although she does not take vacations, Rivera visited her mother in Puerto Rico for around two weeks. R. 87. The air travel to Puerto Rico "was not easy" because of the constant sitting. R. 87.

The ALJ asked whether Rivera was treating with a specialist for depression or anxiety, and Rivera responded that she was not. R. 88.

The ALJ then elicited testimony from the VE. The VE began by characterizing Rivera's past relevant work as "kitchen aide or kitchen helper" and "delivery driver," occupations requiring medium exertion, and "street cleaner," which involved light exertion. R. 96. The ALJ then posed a series of hypothetical questions to the VE. First, the ALJ asked the VE to

> [a]ssume a hypothetical Claimant with this Claimant's age, education and work experience. The hypothetical [claimant] would be limited to light exertion as that term is defined in the DOT and Social Security Regulations. Standing/walking could be six hours in an eight hour workday, and sitting could be eights hours in an eight hour work day. Could occasionally climb ramps, stairs, ladders, ropes, and scaffolds, and occasionally balance, stoop, kneel, crouch and crawl.

R. 96-97. Considering those restrictions, the VE stated that such a hypothetical individual would be able to perform the job of park cleaner / street cleaner, but would not be able to perform the job of kitchen aide or delivery driver. R. 96-97. The VE also confirmed the existence of "other representative occupations in the national economy that could be performed within those restrictions," assuming a limitation of unskilled, light work exertion. R. 97. Those jobs were "officer cleaner," and "hand packager." R. 97. Second, the ALJ asked the VE: "So if a hypothetical Claimant, everything else being the same, but instead of being limited to light exertion is limited to sedentary, that would rule out the past relevant work, is that correct?" R. 97. The VE confirmed that a limitation of sedentary exertion would rule out past relevant

5

work. R. 97.

C. The Medical Evidence

The medical evidence in the record is described accurately in the Commissioner's brief. See Def. Mem. at 4-22. We discuss the medical evidence pertinent to the adjudication of this case in Section III below.

D. The ALJ's Decision

The ALJ denied Rivera's applications on May 12, 2017. R. 64. First, the ALJ found that Rivera met the insured status requirements of the SSA through September 13, 2019. R. 49. Then, following the five-step test set forth in the SSA regulations, the ALJ found at step one that Rivera had not engaged in "substantial gainful activity" since January 17, 2014, the alleged onset date. R. 50. At step two, the ALJ found that during the relevant period, Rivera suffered from a "severe impairment" of "spine disorder." R. 50. The ALJ also found that Rivera suffered from "non-severe impairments" of "plantar fasciitis," "right wrist tendinitis," "depressive, bipolar and related disorders, and anxiety and obsessive-compulsive disorders." R. 50. Also at step two, the ALJ found that Rivera's "medically determinable mental impairments of depressive, bipolar and related disorders, and anxiety and obsessive-compulsive disorders, considered singly and in combination, do not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and are therefore non-severe." R. 50. At step three, the ALJ found that none of Rivera's impairments, singly or in combination, met or medically equaled the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings"). R. 52. In reaching this conclusion, the ALJ gave particular attention to Listing 1.04 (disorders of the spine). R. 52. Before moving to step four, the ALJ addressed Rivera's residual functional capacity ("RFC"). R. 52-62. After consideration of the record, the ALJ found that Rivera had

the RFC to perform "light work,"[2] with the restrictions that Rivera "can lift and carry 20 pounds occasionally and 10 pounds frequently and can sit, stand, and walk 6 hours each in an 8-hour work day. [Rivera] can occasionally climb ramps, stairs, ladders, ropes, or scaffolds. She can occasionally balance, stoop, kneel, crouch, and crawl." R. 52. In making the RFC determination, the ALJ considered Rivera's "symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." R. 52. In addition, the ALJ accorded varying weights to the opinions of treating and non-treating sources who examined Rivera and/or her medical records. R. 56-62. Having determined Rivera's RFC, the ALJ evaluated at step four whether Rivera could perform her past relevant work as a park cleaner and concluded that based on Rivera's RFC, she could. R. 62. Even though the ALJ found that Rivera could perform her past relevant work as a park cleaner, the ALJ continued in the sequential analysis. Thus, at step five, the ALJ concluded — based on Rivera's age, education, work experience, and RFC — that there were other jobs that exist in significant numbers in the national economy that Rivera could also perform pursuant to 20 C.F.R. §§ 404.1569, 404.1569(a), 416.969, and 416.969(a). R. 62-63. For these reasons, the ALJ concluded that Rivera "has not been under a disability, as defined in the Social Security Act, from January 17, 2014, through the date of this decision." R. 63. Accordingly, the ALJ

---

[2] Pursuant to 20 C.F.R. § 404.1567(b), "light work"

involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, [a claimant] must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

7

found Rivera to be "not disabled" under sections 216(i) and 223(d) of the Act. R. 64.

## II. GOVERNING STANDARDS OF LAW

### A. Scope of Judicial Review Under 42 U.S.C. § 405(g)

A court reviewing a final decision by the Commissioner "is limited to determining whether the [Commissioner's] conclusions were supported by substantial evidence in the record and were based on a correct legal standard." Selian v. Astrue, 708 F.3d 409, 417 (2d Cir. 2013) (per curiam) (citations and internal quotation marks omitted); accord Greek v. Colvin, 802 F.3d 370, 374-75 (2d Cir. 2015) (per curiam); see generally 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison Co. v. N.L.R.B., 305 U.S. 197, 229 (1938)); accord Greek, 802 F.3d at 375; Burgess v. Astrue, 537 F.3d 117, 127-28 (2d Cir. 2008); Matthews v. Leavitt, 452 F.3d 145, 152 n.9 (2d Cir. 2006); Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000). The "threshold for such evidentiary sufficiency is not high." Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019).

"Even where the administrative record may also adequately support contrary findings on particular issues, the ALJ's factual findings must be given conclusive effect so long as they are supported by substantial evidence." Genier v. Astrue, 606 F.3d 46, 49 (2d Cir. 2010) (per curiam) (citation and internal quotation marks omitted). Thus, "[i]f the reviewing court finds substantial evidence to support the Commissioner's final decision, that decision must be upheld, even if substantial evidence supporting the claimant's position also exists." Johnson v. Astrue, 563 F. Supp. 2d 444, 454 (S.D.N.Y. 2008) (citing Alston v. Sullivan, 904 F.2d 122, 126 (2d Cir.

8

1990)). The Second Circuit has characterized the substantial evidence standard as "a very deferential standard of review — even more so than the 'clearly erroneous' standard." Brault v. Soc. Sec. Admin., Comm'r, 683 F.3d 443, 448 (2d Cir. 2012) (per curiam) (citation omitted). "The substantial evidence standard means once an ALJ finds facts, [a court] can reject those facts only if a reasonable factfinder would have to conclude otherwise." Id. (emphasis in original) (citations and internal quotation marks omitted). "The role of the reviewing court is therefore quite limited and substantial deference is to be afforded the Commissioner's decision." Johnson, 563 F. Supp. 2d at 454 (citations and internal quotation marks omitted). Importantly, it is not a reviewing court's function "to determine de novo whether [a claimant] is disabled." Schaal v. Apfel, 134 F.3d 496, 501 (2d Cir. 1998) (citation and internal quotation marks omitted); accord Cage v. Comm'r of Soc. Sec., 692 F.3d 118, 122 (2d Cir. 2012).

B. Standard Governing Evaluation of Disability Claims by the Agency

The Social Security Act defines the term "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); see id. § 1382c(a)(3)(A). A person will be found to be disabled only if it is determined that his "impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

To evaluate a Social Security claim, the Commissioner is required to examine: "(1) the objective medical facts; (2) diagnoses or medical opinions based on such facts; (3) subjective evidence of pain or disability testified to by the claimant or others; and (4) the claimant's

9

educational background, age, and work experience." Mongeur v. Heckler, 722 F.2d 1033, 1037 (2d Cir. 1983) (per curiam); accord Brown v. Apfel, 174 F.3d 59, 62 (2d Cir. 1999) (per curiam); Craig v. Comm'r of Soc. Sec., 218 F. Supp. 3d 249, 260 (S.D.N.Y. 2016).

Regulations issued pursuant to the Act set forth a five-step process that the Commissioner must use in evaluating a disability claim. See 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); see also Burgess, 537 F.3d at 120 (describing the five-step process). First, the Commissioner must determine whether the claimant is currently engaged in any "substantial gainful activity." 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). Second, if the claimant is not engaged in substantial gainful activity, the Commissioner must decide if the claimant has a "severe medically determinable physical or mental impairment," 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii), which is an impairment or combination of impairments that "significantly limits [the claimant's] physical or mental ability to do basic work activities," 20 C.F.R. §§ 404.1520(c), 416.920(c). Third, if the claimant's impairment is severe and is listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, or is equivalent to one of the listed impairments, the claimant must be found disabled regardless of his age, education, or work experience. See 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1520(d), 416.920(a)(4)(iii), 416.920(d). Fourth, if the claimant's impairment is not listed and is not equal to one of the listed impairments, the Commissioner must review the claimant's RFC to determine if the claimant is able to do work he or she has done in the past, i.e., "past relevant work." 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant is able to do such work, he or she is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). Finally, if the claimant is unable to perform past relevant work, the Commissioner must decide if the claimant's RFC, in addition to his or her age, education, and work experience, permits the claimant to do other work. 20 C.F.R.

§§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant cannot perform other work, he or she will be deemed disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). The claimant bears the burden of proof on all steps except the final one — that is, proving that there is other work the claimant can perform. See Poupore v. Astrue, 566 F.3d 303, 306 (2d Cir. 2009) (per curiam).

C. The "Treating Physician" Rule

Under the so-called "treating physician" rule, in general, the ALJ must give "more weight to medical opinions" from a claimant's "treating source" — as defined in the regulations — when determining if the claimant is disabled. See 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).[3] Treating sources, which includes some professionals other than physicians, see 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2), "may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). The Second Circuit has summarized the deference that must be accorded the opinion of a "treating source" as follows:

> Social Security Administration regulations, as well as our precedent, mandate specific procedures that an ALJ must follow in determining the appropriate weight to assign a treating physician's opinion. First, the ALJ must decide whether the opinion is entitled to controlling weight. "[T]he opinion of a claimant's treating physician as to the nature and severity of [an] impairment is given 'controlling weight' so long as it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record.'" Burgess, 537 F.3d at 128 (third brackets in original) (quoting 20 C.F.R. § 404.1527(c)(2)). Second, if the ALJ decides the opinion is not entitled to controlling weight, it must determine how much weight, if any, to give it. In doing so, it must "explicitly consider" the following, nonexclusive "Burgess factors": "(1) the frequen[cy], length, nature, and extent of treatment; (2) the amount of medical evidence

---

[3] Although the SSA has since revised its rules to eliminate the treating physician rule, because the claim here was filed before March 27, 2017, the rule applies in this case. See, e.g., Conetta v. Berryhill, 365 F. Supp. 3d 383, 395 n.5 (S.D.N.Y. 2019).

11

> supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist." Selian[, 708 F.3d at 418] (citing Burgess, 537 F.3d at 129 (citing 20 C.F.R. § 404.1527(c)(2))). At both steps, the ALJ must "give good reasons in [its] notice of determination or decision for the weight [it gives the] treating source's [medical] opinion." Halloran v. Barnhart, 362 F.3d 28, 32 (2d Cir. 2004) (per curiam) (quoting 20 C.F.R. § 404.1527(c)(2)). . . . An ALJ's failure to "explicitly" apply the Burgess factors when assigning weight at step two is a procedural error. Selian, 708 F.3d at 419-20.

Estrella v. Berryhill, 925 F.3d 90, 95-96 (2d Cir. 2019). Accordingly, the Second Circuit has stated that it will "not hesitate to remand when the Commissioner has not provided 'good reasons' for the weight given to a treating physician[']s opinion and [it] will continue remanding when [it] encounter[s] opinions from ALJ[s] that do not comprehensively set forth reasons for the weight assigned to a treating physician's opinion." Halloran, 362 F.3d at 33; accord Estrella, 925 F.3d at 96; see also Greek, 802 F.3d at 375-77.

Nonetheless, the Commissioner is not required to give deference to a treating physician's opinion where the treating physician "issued opinions that are not consistent with other substantial evidence in the record, such as the opinions of other medical experts." Halloran, 362 F.3d at 32 (citation omitted). In fact, "the less consistent [a treating physician's] opinion is with the record as a whole, the less weight it will be given." Snell v. Apfel, 177 F.3d 128, 133 (2d Cir. 1999) (citing 20 C.F.R. § 404.1527(d)(4)); see also Veino v. Barnhart, 312 F.3d 578, 588 (2d Cir. 2002) ("Genuine conflicts in the medical evidence are for the Commissioner to resolve.") (citation omitted). Finally, a "slavish recitation of each and every [factor listed in 20 C.F.R. § 404.1527(c)]" is unnecessary "where the ALJ's reasoning and adherence to the regulation are clear," Atwater v. Astrue, 512 F. App'x 67, 70 (2d Cir. 2013) (summary order) (citing Halloran, 362 F.3d at 31-32), and even where the ALJ fails to explicitly apply the "Burgess factors," a court may, after undertaking a "'searching review of the record,'" elect to

affirm the decision if "'the substance of the treating physician rule was not traversed.'" Estrella, 925 F.3d at 96 (quoting Halloran, 362 F.3d at 32).

III. DISCUSSION

Rivera raises essentially three grounds for reversing the ALJ's decision, which mirror those in her brief to the Appeals Council, R. 346-49. First, Rivera argues that the ALJ erred in failing to consider all of Rivera's medical records necessary to "discern the ALJ's rationale" in finding Rivera not disabled.[4] Pl. Mem. ¶¶ 3-6. Second, Rivera argues that — as a result of the ALJ ignoring medical evidence — the ALJ improperly weighed the opinions of her treating physicians and discounted her hearing testimony. Id. ¶¶ 7-8. Third, Rivera argues the ALJ erred in according great weight to the opinions of "single decision-maker" M. Robinson. Id. ¶ 9. Because we find merit to the third argument, we need not decide whether the other issues by themselves would warrant remand.

The ALJ assigned "great weight" to the opinions of "state medical consultant M. Robinson" that Rivera could occasionally "lift and/or carry 20 pounds[,] . . . climb ramps, stairs, ladders, ropes, or scaffolds," and "balance, stoop, kneel, crouch, and crawl." R. 56; see R. 107-08, 119-20. Although the ALJ refers to Robinson as a "state medical consultant," there is every indication that Robinson was a "single decision-maker," or "SDM." R. 109, 120. The ALJ appears to have incorporated Robinson's opinions into his ultimate RFC determination. See R. 52, 107-08, 119-20.

"SDMs are non-physician disability examiners who may make the initial disability

---

[4] Rivera notes that the ALJ has "an affirmative duty to accurately develop the administrative record." Pl. Mem. ¶ 7 (citing Burgess, 537 F.3d at 129). We agree. But there is no evidence that the ALJ failed in this respect, and Rivera does not point to any records the ALJ failed to procure or a specific doctor that the ALJ failed to contact.

determination in most cases without requiring the signature of a medical consultant." Barrett v. Berryhill, 286 F. Supp. 3d 402, 429 (E.D.N.Y. 2018) (citations and internal quotation marks omitted). As of May 2010, ALJs have been instructed that "RFC determinations by SDMs should not be afforded any evidentiary weight at the administrative hearing level." Curtis v. Astrue, 2012 WL 6098258, at *6 (N.D.N.Y. Oct. 30, 2012) (citation omitted). Accordingly, "[a]n SDM assessment is not a medical opinion for the purposes of appeals." Sylcox v. Colvin, 2015 WL 5439182, at *12 (S.D.N.Y. Sept. 15, 2015) (citing Alberalla v. Colvin, 2014 WL 4199689 at *10 (W.D.N.Y. Aug. 22, 2014), and Sears v. Astrue, 2012 WL 1758843 at *6 (D. Vt. May 15, 2012)). "It is thus legal error to weigh an SDM's opinion as if he or she were a medical professional." Barrett, 286 F. Supp. 3d at 429 (citing Box v. Colvin, 3 F. Supp. 3d 27, 46 (E.D.N.Y. 2014)); accord Buono v. Colvin, 2015 WL 4390645, at *2 (E.D.N.Y. July 15, 2015); Charles v. Colvin, 2014 WL 4425796, at *5 (E.D.N.Y. Sept. 10, 2014); see also Sears, 2012 WL 1758843 at *6 (citing Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987), for the proposition that the harmless error standard applies to improperly weighing the opinions of an SDM).

Here, the ALJ erred in according "great weight" to the opinions of SDM Robinson that Rivera could occasionally "lift and/or carry 20 pounds[,] . . . climb ramps, stairs, ladders, ropes, or scaffolds," and "balance, stoop, kneel, crouch, and crawl." R. 56. While "any error an ALJ may have made in weighing the opinion of an SDM as if he was a medical consultant" may be found to harmless, this is true only if "the ALJ did not heavily rely on this opinion in denying benefits." Sylcox, 2015 WL 5439182, at *12 (citations, internal quotation marks, and alterations omitted). Here the ALJ gave the SDM opinion "great weight" and adopted the SDM's opinions entirely in the ALJ's ultimate RFC determination. Compare R. 52, with R. 107-08, 119-20. Courts have remanded where, as here, the ALJ accorded great weight to the opinions of the

SDM, see, e.g., Sylcox, 2015 WL 5439182, at *12; Box, 3 F. Supp. 3d at 46-47; see also Andrisani v. Comm'r of Soc. Sec., 2019 WL 1292233, at *3 (W.D.N.Y. Mar. 21, 2019) (remanding where the ALJ assigned the SDM's opinion "some weight," and "appears to have used the SDM's opinion as a template or an anchor for a light-work RFC").

Remand is especially warranted here because "the Court cannot tell how much influence the SDM's opinion had over the ALJ's analysis." Andrisani, 2019 WL 1292233, at *4. It appears that the ALJ relied heavily on Robinson's opinions. Indeed, the ALJ assigned "great weight" to the opinions of only two other professionals. He accorded great weight to the opinions of T. Inman-Dundon, a state psychological consultant, R. 57, who opined as to Rivera's mental impairments, but not her physical impairments, R. 106, 117. The ALJ also accorded great weight to the March 2015 opinions of Dr. Syeda Asad, the physical consultative examiner. R. 58. Thus, the ALJ relied heavily on the opinions of Robinson and Dr. Asad. However, while Dr. Asad opined that Rivera had only "[m]ild limitation with squatting and kneeling because of lower back pain," and "mild to moderate restriction for heavy lifting and carrying because of herniated lumbar disc," R. 541-42, Dr. Asad also found on examination that Rivera's "[l]umbar spine show[ed] flexion 45 degrees due to pain in the lower back region," R. 540-41, suggesting that Rivera's ability to stoop, i.e., bend, was significantly limited. See R. 500 (chart showing full lumbar flexion-extension to be 90 degrees); see also Golembiewski v. Barnhart, 322 F.3d 912, 917-18 (7th Cir. 2003) (remanding case after finding that the ALJ's conclusion that claimant could stoop occasionally was undermined by limitation of flexion to 40 degrees); cf. Molina v. Barnhart, 2005 WL 2035959, at *8 (S.D.N.Y. Aug. 17, 2005) (citing cases where ALJ failed to properly address claimants' ability to stoop or bend). This limitation as to Rivera's lumbar flexion conflicts with the ALJ's RFC finding that Rivera could, for example, stoop

15

"occasionally," which includes up to a third of the day. See Golembiewski, 322 F.3d at 917 (citing SSR 83-14). The limitation was further confirmed by Rivera during her hearing testimony when she stated that it was difficult for her to bend. See R. 84; see also id. (Rivera testifying that she cannot lift a gallon of milk without experiencing pain). Furthermore, ALJ accorded "little weight" to the only other physicians who opined as to Rivera's most severe physical limitations relating to the ALJ's final RFC determination. See R. 59, 61 (the ALJ according little weight to treating physicians' opinions concerning Rivera's ability to sit/stand, stoop, and crawl in an eight hour workday). The ALJ cited no other opinion evidence "that clearly supported the ALJ's conclusions in the RFC assessment and it was not clear whether the ALJ would have found an ability to perform light work without having accounted for [the SDM's opinions]." Ridley v. Comm'r of Soc. Sec., 2018 WL 799160, at *6 (N.D.N.Y. Feb. 8, 2018). Thus, it appears that the ALJ relied heavily, if not exclusively, on the findings of Robinson to make the RFC determination. "Such reliance was not harmless." Sylcox, 2015 WL 5439182, at *12; see, e.g., Buono, 2015 WL 4390645, at *2 ("[T]he ALJ erred in basing his RFC finding almost exclusively on the SDM's RFC determination."); Charles, 2014 WL 4425796, at *5 ("By basing his RFC assessment almost exclusively upon a standardized form prepared by a non-medical professional, the ALJ failed [in his] duty.").

Even the Commissioner appears to acknowledge the ALJ's erroneous reliance on the opinions of Robinson, though the Commissioner argues any such error was harmless. See Def. Mem. at 27 n.1 ("It is unclear from the record whether M. Robinson was a medical doctor or a single decision-maker ("SDM") . . . , but any mistake was harmless given the supporting opinions from other physicians, like Dr. Asad."); Def. Reply at 4-5 (same). The Commissioner cites two cases in support of its harmless error argument. See Def. Mem. at 27 n.1; Def. Reply

at 5. The reasoning of these cases, however, is inapplicable here. First, in <u>Vargas v. Berryhill</u>, 2017 WL 2274240 (W.D.N.Y. May 25, 2017), "the ALJ's RFC assessment was generally more restrictive than the SDM's opinion." <u>Id.</u> at *5. Here, the ALJ made an RFC determination mirroring the RFC opinions of the SDM. In <u>Sears v. Astrue</u>, 2012 WL 1758843 (D. Vt. May 15, 2012), the court found that "any error the ALJ may have made in weighing the opinion of [the] SDM . . . as if he was a medical consultant [was] harmless, given that the ALJ did not heavily rely on this opinion in denying benefits." <u>Id.</u> at *6. Here, as discussed above, the ALJ gave great weight to the SDM's opinions and appeared to have relied heavily on his opinions in making an ultimate disability determination. Thus, these cases do not support the Commissioner's position.

In sum, because the ALJ improperly accorded great weight to the opinions of SDM Robinson as explained above, the case is remanded for further proceedings.

## IV. CONCLUSION

For the foregoing reasons, Rivera's motion (Docket # 22) is granted and the Commissioner's motion (Docket # 15) is denied. This case is remanded to the Commissioner for further proceedings consistent with this opinion. The Clerk is requested to enter judgment.

SO ORDERED.

Dated: New York, New York
September 10, 2019

*[signature]*

GABRIEL W. GORENSTEIN
United States Magistrate Judge

17

Copy sent to:

Lissette Rivera
2141 Prospect Avenue, Apt. 2
Bronx, New York  10457